# NATIONAL METALLURGICAL CORP.
## *v.*
## DEPARTMENT OF REVENUE

Laurence E. Thorp, Lively & Wiswall, Springfield, represented plaintiff.

James D. Manary, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered May 20, 1977.

CARLISLE B. ROBERTS, Judge.

Plaintiff has appealed from defendant's denial of

relief under ORS 307.475, the "hardship" statute. (Defendant's refusal to recommend relief to the Lane County's Department of Assessment and Taxation was conveyed in a letter to the plaintiff, in care of its legal counsel, dated June 15, 1976, and was signed by the Director of the Department of Revenue, State of Oregon.)

The facts have been stipulated. Plaintiff, an Oregon corporation, began construction of manufacturing facilities in Springfield, Oregon, in April 1974. Pursuant to ORS 307.330:

"* * * [a] new building or structure or addition to an existing building or structure is exempt from taxation for each year of not more than two consecutive years if the building, structure or addition:

"(a) Is in the process of construction on January 1;

"(b) Is not in use or occupancy on January 1;

"(c) Has not been in use or occupancy at any time prior to such January 1 date;

"(d) Is being constructed in furtherance of the production of income; * * *"

upon compliance with ORS 307.340, which requires documentary proof that the property meets these conditions. "No cancellation of assessment shall be made unless the required proof is filed" with the county assessor on or before April 1 of the year for which cancellation of assessment is sought.

The plant manager for plaintiff's Springfield manufacturing facility was the officer responsible to the corporation to obtain cancellation of assessment for the buildings under construction for the tax year 1975-1976 pursuant to ORS 307.330. The plant manager had contracted for the services of an independent certified public accountant to assist in the preparation of plaintiff's real and personal property tax returns. The plant manager had requested the accountant to prepare plaintiff's pollution control facilities exemption claim (ORS 307.420). At that time, the plant manager thought that he had made it clear that he also wished the accountant to prepare the claim for the

new construction exemption. Apparently, the accountant was not aware of or did not understand this instruction because the exemption application was not prepared and filed. (In an affidavit, the plant manager stated that "* * * in retrospect, I can understand Mr. * * * [the accountant's] misinterpretation of what I wished him to do.") In November 1975, plaintiff requested relief of the Director of the Department of Revenue pursuant to ORS 307.475.[1]

In his letter of denial, defendant's director stated:

"I have reviewed the evidence and testimony given at the hearing, as well as the affidavits and other documents attached to the petition in National Metallurgical Corporation's request for relief under the hardship statute.

"* * * * *

" 'Good and sufficient cause' as used in ORS 307.475 has recently been reviewed by the Oregon Tax Court. The Court agreed with the Department's position in *Pratum Co-op Warehouse v. Department of Revenue,* OTC No. 924 June 27, 1975 [6 OTR 130 (1975)], that 'good and sufficient cause exists only where there has been illness, absence, or disability of such a nature as to preclude filing the claim during a substantial portion of the filing period.' The Court also agreed with the Department's position refusing a favorable recommen-

---

[1] ORS 307.475 provides:

"(1) Any taxpayer may apply to the Director of the Department of Revenue for a recommendation that the value of certain property be stricken from the assessment roll and that any taxes assessed against such property be stricken from the tax roll on the grounds of hardship.

"(2) As used in this section, 'hardship' means a situation where property is subject to taxation but would have been exempt had there been a timely filing of a valid claim for exemption or cancellation of assessment, and where the failure to make timely application for the exemption or cancellation was by reason of good and sufficient cause.

"(3) An application to the director for a recommendation of tax relief on the grounds of hardship must be made not later than December 15 of the year in which the failure to claim the exemption or cancellation of assessment occurred, * * *.

"(4) If the director, in his discretion, finds that tax relief should be granted on the grounds of hardship, he shall send his written recommendation to the assessor of the county in which the property is located. * * *"

dation where 'the applicant failed to file a timely application because of oversight, inadvertence, or ignorance of the law.' However, the Court in *Rogue River Packing Corporation v. The Department of Revenue,* Oregon Tax Court No. 946 January 21, 1976 [6 OTR 293 (1976)], felt the Department should not limit its review of the facts to just the three grounds considered favorable. When the Department is considering the hardship petition, it must take 'into account the legal interpretations of hardship and good and sufficient cause.'

"There has been no specific interpretation of 'misunderstanding' as it relates to good and sufficient cause. However, the particular facts which caused the failure to file in this case have been carefully reviewed by the Department. 'Misunderstanding' between responsible officials is in my opinion comparable to inadvertence, and ignorance of the law and does not constitute good and sufficient cause within the meaning of ORS 307.475."

Plaintiff contends that the director abused his discretion in failing to consider legal interpretations of good and sufficient cause, and prays for a decree from this court remanding the cause to defendant for reconsideration. Plaintiff asserts that the "misunderstanding" between the plant manager and the accountant, coupled with the fact that there were great demands on the plant manager's time, due to imminent completion of construction and his inability personally to complete personal and real property tax returns, entitles plaintiff to relief under ORS 307.475.

In two other cases based on ORS 307.475, this court has considered the judicial scope of review of decisions of the director in hardship cases:

"ORS 307.475 is a clear example of legislative entrustment of discretion in an administrative agency. This court has previously taken notice that when discretion has been vested in an administrative officer, the court will confine its review of the officer's action to consideration whether the officer exercised his discretion judiciously and not capriciously and arrived at no conclusion which was clearly wrong. [Citations omit-

ted.]" (*Pratum Co-Op Whse. v. Dept. of Rev.,* 6 OTR 130, 134 (1975).)

"The court is first confronted with a question as to what powers it can exercise in the premises. Reviewability of an administrator's discretion is fraught with problems. The determination of 'hardship' is the determination of a question of fact. The legislature has vested discretion in the Director of the Department of Revenue to determine this question. There is no reason to believe that the court's judgment should supplant the judgment of the director. Any attempt to do so might well be regarded as an infringement by the judiciary of the executive branch's jurisdiction, in violation of the constitutional separation of powers. *See Pratum Co-op Whse., supra.*" (*Rogue River Pack. v. Dept. of Rev.,* 6 OTR 293, 297-298 (1976).)

Plaintiff argues that the *Pratum Co-Op Whse.* case is distinguishable here, and that the director has not observed the mandate of *Rogue River Pack., supra,* through his failure to consider the legal interpretations of "good and sufficient cause." Plaintiff contends that the circumstances in the case at bar are similar to those present in *Rogue River Pack.,* where "a concatenation of events, *none of which appears to have been within the control of the plaintiff's management,*" was the reason for the failure to timely file an application for cancellation of assessment. *Rogue River Pack., supra,* 295.

■ Plaintiff has also drawn analogies between the phrase "good and sufficient cause" and the terms "excusable neglect" as used in ORS 311.806 and "reasonable cause" as used in the Internal Revenue Code (1954), § 6651. As the defendant pointed out in its brief, these terms are not analogous to "good and sufficient cause" because they do not involve " 'the difficult exercise of discretion to determine whether an important rule, a time limitation, which the legislature intends to be enforced, should be supervened.' *Rogue River Pack.,* 6 OTR Adv Sh at 295." (Def Br at 8.)

[ 146 ]

Plaintiff cites an opinion of the Attorney General (22 Op Atty Gen 169 (1944-1946)), which interpreted the term "excusable neglect" as it was used in the predecessor of ORS 311.806. The statute provided that a refund might be obtained by a person who paid property taxes in excess of the amount legally chargeable through excusable neglect. This situation is not analogous to the circumstances giving rise to a determination of "hardship" by the Director of the Department of Revenue under ORS 307.475. There is no provision in ORS 311.806 for the exercise of discretion in recommending relief upon the determination of the existence of "excusable neglect."

With respect to Internal Revenue Code (1954), § 6651, which exempts a taxpayer from penalties incurred for late filing of tax returns, provided there is "reasonable cause" for failure to meet a filing deadline, again, there is no provision for a discretionary determination of reasonable cause. In fact, the U. S. Treasury has issued regulations stating that reasonable cause is equivalent to the exercise of ordinary business care and prudence by a taxpayer (Treas Reg § 301.6651-1(c)(1)).

In support of its argument that a mistake of fact constitutes "good and sufficient cause" for purposes of ORS 307.475, plaintiff cites the case of *Scott v. Ford,* 45 Or 531, 78 P 742, 80 P 899 (1904), which, on rehearing, discussed the meaning of "mistake of fact." Plaintiff argues that a mistake of fact is not comparable to ignorance of the law or inadvertence, as was intimated by the Director of the Department of Revenue in his letter of denial, dated June 15, 1976, when he stated: "* * * 'Misunderstanding' between responsible officials is in my opinion comparable to inadvertence, and ignorance of the law and does not constitute good and sufficient cause * * *." *Scott v. Ford* involved an action to recover money paid by an executor to a person he mistakenly believed was entitled to a legacy. In that case, the court reviewed the law that applies to

payment of money under mistake of fact. This is clearly distinguishable from the case before this court.

Turning from the issue of the meaning and application of the words "good and sufficient cause," plaintiff has argued that the Director of the Department of Revenue abused his discretion in determining that plaintiff was not entitled to relief under the hardship statute. Plaintiff believes that the director violated certain of the standards adopted by this court in *Rogue River Pack., supra,* 6 OTR at 300-301 (quoted from *Richardson v. Neuner,* 183 Or 558, 564, 194 P2d 989, 991-992 (1948)); specifically that the director had committed an error of law, exercised his discretion capriciously, and arrived at a conclusion which was clearly wrong. Plaintiff has made only a conclusory statement (Pl Br at 13) that "good and sufficient cause" exists under the facts present in this case. Prior discussion of plaintiff's arguments with respect to the meaning of "good and sufficient cause" and the distinguishing of the case of *Scott v. Ford, supra,* in this decision, dispose of plaintiff's contention that the director was patently in error in determining that there was no "good and sufficient cause" in this case.

Two additional arguments have been raised by the plaintiff. First, plaintiff has argued that this court should consider expressions of legislative intent as manifested by statements of the sponsor of SB 472, 57th Legislative Assembly (1973) (enacted as Or Laws 1973, ch 218, and codified as ORS 307.475). Plaintiff cites two recent Oregon Supreme Court cases, *State v. Leathers,* 271 Or 236, 531 P2d 901 (1975), and *Jones v. Jones,* 270 Or 869, 530 P2d 34 (1974), in support of this argument. In *Pratum Co-op Whse., supra,* this court refused to consider the testimony of the chief proponent of the bill, because "[t]he necessary legal fiction of 'legislative intent' is not aided by the statements of a single legislator," citing *Murphy v. Nilsen,* 19 Or App 292, 527 P2d 736 (1974).

The cases cited by plaintiff in urging the court to

consider the expression of intent by a distinguished senator, the proponent of the bill, are not appropriate to the case at bar. *State v. Leathers, supra,* dealt with a statute allowing a sentencing court to order that a judgment be executed in a jail in another county in the State of Oregon (ORS 137.140). Minutes of the Criminal Law Revision Commission were considered by the Supreme Court in determining the legislative intent for an amendment to the statute. In that statute, one word had been deleted and the commission minutes were consulted to assist the court in determining the reason for that deletion. The court also considered legislative policy as expressed in Oregon's criminal procedure statutes prior to reaching a final decision. The present case requires the determination of intent behind an entire statute, not merely that of an amendment.

The case of *Jones v. Jones, supra,* involved the construction of an amendment to the Oregon wrongful death statute which had been altered to specifically define the class of persons entitled to recover under that act. The Supreme Court's determination of legislative intent was bolstered by a quotation from the testimony of the sponsor of the bill before a Senate committee. However, the case did not turn thereon; the court appeared to rely most heavily on the actual language of the statute and not on the sponsor's testimony.

In the present case, this court adheres to the position taken by it in *Pratum Co-Op Whse., supra,* on the uses of legislative history. The reasons for holding to this rule have been most sensibly stated in a quotation from the Earl of Halsbury in the case of *Hilder v. Dexter,* AC 474 (1902), cited in 2A *Sutherland Statutory Construction* 215, § 48.12 (C. Sands, 4th ed 1973):

> " "* * * [I]n construing a statute I believe the worst person to construe it is the person who is responsible for its drafting. He is very much disposed to confuse what he intended to do with the effect of the language which in

fact has been employed. At the time he drafted the statute, at all events, he may have been under the impression that he had given full effect to what was intended, but he may be mistaken in construing it afterwards just because what was in his mind was what was intended, though, perhaps, it was not done.' "

■ The dangers of reliance on legislative history are well known and such reliance shall be eschewed as fully as possible.[2]

Plaintiff's second additional contention is that the defendant has mechanically applied rules of "inclusion" and "exclusion" with respect to petitions for relief under ORS 307.475. Plaintiff contends that this court, in *Rogue River Pack., supra,* rejected what plaintiff terms "a rule of inclusion" which would allow relief only in cases of illness, absence or disability, and thus impliedly rejected a "rule of exclusion" that would require automatic denial of any petition where the director had determined that ignorance of law or inadvertence was the cause of a failure to file for exemption. Plaintiff argues that it is as wrong to say that inadvertence or ignorance of the law is never good cause as it is to say that only absence, illness or disability is ever good cause.

■ As this court stated in *Rogue River Pack., supra,* at 302-303:

"In the present case, the court finds that the defendant has erred by stating a 'rule' that restricts it in exercising the discretion granted it by the legislature, and, in following its 'rule,' it may have ignored important testimony available to it and necessary to a decision.

"* * * * *

"The decided cases clearly show that there can be no specific meaning attributed to the words 'good cause,' or 'good and sufficient cause'; each is an expression of a conclusion based upon the particular facts in a case

---

[2]For useful information on interesting aspects of this perilous subject and the citation of strong authority, *see* R. Stringham, *Crystal Gazing: Legislative History in Action,* 47 ABAJ 466 (May 1961).

which has been fully developed by testimony and has been carefully weighed by the trier of fact. * * *

"It is the opinion of the court that the defendant's restrictive 'rule' is clearly wrong, since it is too narrow to come within the concepts of ORS 307.475. * * *"

That case was remanded to the department for reconsideration and issuance of a new order because the court felt that the defendant had not received important testimony necessary to a decision. Also, in that case, plaintiff had not been represented by counsel at the administrative hearing.

■ The present case is distinguishable from the *Rogue River Pack.* situation, as plaintiff was adequately represented by counsel and was afforded a hearing and the opportunity to submit affidavits prior to the director's determination. This court held in *Rogue River Pack., supra,* 6 OTR at 301:

"An abuse of discretion on the part of the administrative agency is found where the agency does not act upon the facts presented to it or fails to obtain the factual data necessary for a proper result. * * *"

There is no evidence before the court that the Director of the Department of Revenue did not act upon all the facts presented to him or failed to obtain necessary factual data prior to making a determination on the question of the existence of good and sufficient cause.

Plaintiff's basic problem lies in the plant manager's failure of communication, a failure which must command the sympathy of all (since it plagues all mankind). It is so common that, if it were accepted by the defendant as "good and sufficient cause," the April 1 limitation for filing found in ORS 307.330 would be effectively revoked. But the legislature did not revoke it; it adopted the extraordinary, three-tiered scheme set out in ORS 307.475 instead.

The director's exercise of discretion was soundly based and the court has no power to alter it. Plaintiff

can take nothing by its complaint and it must be dismissed.

Costs are awarded the defendant.